# CHARLESTON.

## ROPAR v. ROPAR.

### Submitted April 18, 1916.    Decided April 25, 1916.

1. EQUITY—*Pleading—Bill—Multifariousness.*

    A bill filed for the purpose of impeaching a will, and asking for the preservation of the property pending the suit, is not for that reason multifarious.    (p. 231).

2. WILLS—*Probate—Notice.*

    A proceeding before a clerk of a county court to admit a paper purporting to be a will, is *ex parte,* and the person interested need not be notified that the paper will be so presented to the clerk. (p. 231).

3. SAME—*Probate—Suit to Impeach or Establish.*

    After the order or sentence made by the clerk of the county court, a person interested may within five years proceed by bill in equity to impeach or establish the will.    If no such bill be filed within that time, the order or sentence shall be forever binding, excepting, however, the right of an infant to file such bill within one year after he becomes twenty-one years of age.    (p. 232).

4. SAME—*Suit to Impeach—Interest in Estate.*

    Where a will directs the payment of a certain note, and a bill is filed by the children of the decedent to impeach the will, and it is alleged in the bill that the decedent at the time the will and note were executed was insane, and that the note was without consideration, and the will provides that the children take "whatever is left," the children have an interest in avoiding the will and taking as heirs at law, for the reason that the payment of the note would diminish the amount to be received by them, and if the will stands, the validity of the note cannot be questioned. (p. 234). .    ⟍

Appeal from Circuit Court, Marshall County.

Bill in equity by Nicholas Ropar and others against Anna Ropar and others.   From a decree for defendants, plaintiffs appeal.

*Reversed and remanded.*

*Martin Brown* and *J. Howard Holt,* for appellants.

*J. M. Ritz,* for appellees.

MASON, JUDGE:

This is a suit in chancery brought by the four infant children of Marcus Ropar, deceased, to contest and declare void a certain paper purporting to be the will of their father. Plaintiffs are all the children of Marcus Ropar, deceased, and are under the age of twenty-one years, and prosecute this suit by a next friend. This paper purporting to be the last will of said Marcus Ropar, dated February 14, 1913, was admitted to probate by the clerk of the county court of Marshall County on the 3rd day of May, 1913.

The bill alleges that at the time of the execution of said paper the said Marcus Ropar "was wholly insane, *non compos mentis,* and incapable of understanding or transacting any business." The bill further alleges, "that at the time of his death and for a long time previous thereto,—for at least a period of seven years—the said Marcus Ropar had deserted his wife and children, and had been living in adultery with the defendant, Mary Papa; and that she had obtained such an influence and such control and ascendency over him, that the will and mind of the said Marcus Ropar was wholly overwhelmed by the influence, will and mind of the said Mary Papa, and he the said Marcus Ropar was wholly unable to do anything of his own initiative; and that while he was under the influence of the said Mary Papa and unduly dominated by her, that she, the said Mary Papa, together with other persons to the plaintiffs unknown, conspired and procured" the paper dated the 14th day of February, 1913, to be made; and alleges that the said paper is not the last will of the said Marcus Ropar.

A copy of the will is exhibited and made part of the bill. The following are the clauses providing for the disposition of the property:

"First I want as soon as convenient after my death all of my just Debts to be paid out of my estate and all outstanding notes bearing My Signature.

"Second after My Debts are all paid the Residue of My Estate My wife Anna Ropar is to have the one third of the amount Left as her own So Long as she Lives or the interest that Accrues or Rental.

"Third: and the Residue Left after all debts and Expenses are paid and a Deed of Trust against My Real Estate and note held by Mary Papa for serviced Rendered by her for taking care of Me during my Sickness and for keeping house for me for Several years

"Third: Now my children namely Nicholas Ropar Mary Ropar Katie Ropar and John Ropar the Residue whatever be Left is to be divided Equally between My four children as named in my Last Will and Testament."

By the fourth clause he revokes all former wills; and by the last clause appoints Stephen Vidonic his executor. It is alleged in the bill that Marcus Ropar died possessed of real estate worth $3,000.00, and personal estate of about the same value.

The bill further avers that the note in favor of Mary Papa, referred to in the will, is for $2,000.00, dated the same day the will is dated, and payable one year after the death of the said Marcus Ropar. Plaintiffs deny that said note was executed at all, or if executed, it was done while said Marcus Ropar was under the influence of said Mary Papa, and while he was insane, etc.; and that there was nothing due or owing to the said Mary Papa from said Marcus Ropar, on said 14th day of February, 1913.

The bill further alleges that the said Stephen Vidonic qualified as executor under the alleged will, and that he represented to the mother of the plaintiffs that the claim of Mary Papa would not be paid, and could not be collected, and that he would defeat the claim and care for the interests of the plaintiffs; and that plaintiffs and their mother relied upon these representations, but that said Vidonic instituted a suit in chancery in the circuit court of Marshall County, alleging that the said Marcus Ropar was largely indebted and had no personal property at the time of his death out of which the debts could be paid, and set up this note of $2,000.00 in favor of Mary Papa as a debt. Such proceedings were had in that suit that a decree was made for the payment of the same, the said Vidonic making no defense. The decree of sale has not yet been executed.

The bill prays that an opportunity be given to the plain-

tiffs to contest the probate of the paper writing purporting to be the last will and testament of Marcus Ropar, deceased; that the court direct an issue out of chancery, *devisavit vel non*, to be tried by a jury to ascertain whether or not the said paper writing is the true last will and testament of said Marcus Ropar; that the proceedings in the office of the clerk of the county court admitting to probate the said paper writing, be held null and void; that the appointment of Stephen Vidonic as executor of said paper writing be avoided, and his acts be held to be of no force and effect; that the suit brought against the plaintiffs by said Stephen Vidonic as executor, be dismissed and held for naught; and that the court restrain the sale of the real estate of which Marcus Ropar died seized, until such time as the matters complained of in the plaintiffs' bill can be fully heard.

The defendant Mary Papa appeared and demurred to the bill, which demurrer was sustained, and the bill dismissed.

Counsel for Mary Papa insists that the circuit court did right in sustaining the demurrer to the bill:

First; Because the bill is multifarious, in that it seeks to impeach the will, and set aside a decree in another suit, and to enjoin the sale of property under a pending suit in the same court. An examination of the bill will show that it is not properly subject to this criticism. The object of the suit is to contest the alleged will. This suit was not instituted for nearly twenty months after the will was admitted to probate. The person named as executor had taken possession of the property, and had instituted a suit to settle the estate, under the alleged will. The will could not be contested in that suit, so that when this suit was instituted to impeach the will, it was proper to provide for the preservation of the property. If the plaintiff shall succeed in this suit, and the paper purporting to be the will shall be declared not to be the will of Marcus Ropar, then it will be necessary to make very material modifications of the suit brought by the alleged executor to settle the estate. It was entirely proper to stay the proceeding until after this is determined. Therefore the bill is not multifarious.

Second; Counsel for defendant Mary Papa insists that the

bill is bad because the plaintiffs do not show a right to main-
tain the bill. He argues that the plaintiffs' only remedy was by
appeal from the order of the probate, under section 29, chapter
77 of the Code, they having been notified that the will would
be offered for probate. Counsel misapprehends the laws of
this state in relation to the probate of wills and the remedies·
of persons who desire to contest papers admitted to probate
as wills. During the recess of the regular sessions of the
county court, a paper purporting to be a will may be present-
ed to the clerk thereof in his office, and such clerk may admit
it to record upon the same proof and with like effect as the
court could do if in session, "but no contest as to such pro-
bate or record shall be heard or determined by the clerk."
Sec. 26, ch. 77, Code. The probate of wills so made must be
reported by the clerk to the next regular session of the county
court, when if no objection be made thereto, and none appear
to the court, the court shall confirm the same. The proceed-
ing before the clerk is *ex parte.* The fact that the plaintiffs
had notice that the paper would be offered for probate, does
not affect the case. In no event would the clerk have the
right to hear or determine a contest as to the probate or rec-
ord. If any person interested appear in the county court and
object to the proceedings had before the clerk, the county
court is required to hear and determine the same and proceed
in relation thereto in the same manner as if the application
for probate had been made to the court. Sec. 26, ch. 77, Code.
Any person interested, desiring to contest a will so admitted
to record, may within five years from an order or sentence of
a court not appealed from, or from an order or sentence of a
court on appeal, file a bill in equity to impeach or establish
such will on such grounds as would give to a court of equity
jurisdiction over other judgments at law. Secs. 31-32, ch.
77, Code. If the person so interested be under the age of
twenty-one years at the time of the order or sentence, he may
file such bill within one year after he becomes of age. Sec.
33, ch. 77, Code.

   But a person desiring to have a paper purporting to be a
will admitted to record, instead of proceeding *ex parte,* may,
under section 26, chapter 77 of the Code, file his petition there-

for in the county court of the proper county, stating what per-sons so far as he knows are interested in the probate thereof. The court or clerk shall thereupon award proper process; and by sections 28 and 29, chapter 77 of the Code, it is provid-ed that, ''When all the persons interested in the probate of such will have been properly convened before the court by the execution of process, or order of publication, or otherwise, the court shall proceed as soon as practicable to hear and deter-mine the motion for such probate, and make such order or sentence thereon as the law and the evidence in the case shall require.'' ''Any person feeling himself aggrieved by an or-der or sentence of the county court confirming or refusing to confirm the action of the clerk of the county court as to the probate of any will, or in admitting or refusing to admit any will to probate, may, within one year, or if such person be un-der any disability, within one year after such disability is removed, file his petition in the circuit court of such county, or before the clerk thereof, appealing to said circuit court from such order or sentence, stating in said petition the grounds of his appeal, and the parties interested in the pro-bate of the will; and in case of such appeal, it shall be the duty of the clerk of the county court, as soon as possible after he is informed thereof, to transmit to the clerk of the circuit court, the said will and all the papers filed or used in the proceedings for such probate, together with copies of all orders and proceedings thereon, and the case shall be proceeded in, tried and determined in said court, regardless of the proceed-ings before the county court or clerk thereof, and in the same manner and in all respects as if the application for such pro-bate had been originally made to the circuit court.'' And the circuit court upon such appeal ''shall order a trial by jury, if any person interested so desire, to ascertain whether the will in question, or if there be more than one will in ques-tion, which of them is the true will of the decedent; and if no such trial be asked, the court shall proceed without a jury to decide the question of probate, and shall make and enter in relation thereto, such final sentence or order as the law and the evidence may require. A copy of such sentence or order shall, if the will be admitted to probate, together with the

will so admitted, be returned to and filed in the office of the clerk of the county court.'' The order of the county court in such proceeding, and the order of the circuit court on appeal, is a bar to any bill in equity to impeach or establish such will unless on such grounds as would give a court of equity jurisdiction over other judgments at law. Sec. 31, ch. 77, Code. The foregoing is the proper procedure where a petition has been filed in the county court.

But an *ex parte* proceeding before the clerk of the county court, or a proceeding before a county court on a petition as above stated, or on appeal therefrom to the circuit court, does not take from a person interested, unless he was a party to the proceeding upon such petition before the county court, or on the appeal therefrom to the circuit court, the right to file a bill in equity within five years after such order or sentence, to impeach or establish the will, and to require a trial by jury to ascertain whether any, and if so, how much, of what was so offered for probate be the will of the decedent. Sec. 32, ch. 77, Code.

In the case at bar the proceeding was before the clerk of the county court, and notwithstanding the plaintiff may have been notified, it was *ex parte.* The notice availed nothing. The plaintiffs had a perfect right to institute and prosecute this suit to impeach the will. See *Coffman* v. *Hedrick,* 32 W. Va. 119.

Third; Counsel for Mary Papa insists that the court did right in sustaining the demurrer to the bill for the reason that the plaintiffs show no right to maintain the bill, because they will take the same or more under the will than they would take under the law as heirs. This would be true were it not for the fact that the will directs the payment of ''a note held by Mary Papa for services by her for taking care of me during my sickness and for keeping house for me for several years.'' It is alleged that this note was for two thousand dollars. It is alleged that this note was executed, if at all, on the same day the will was executed; that at that time the decedent was insane; that the note was without consideration; and that there was nothing due her from the decedent at the time it was executed. These allegations, upon de-

murrer, must be taken as true, and if true, the note should not be paid; but if the will stands, it will be the duty of the executor to pay the note. This would lessen the amount to be paid the plaintiffs under the will. If we are correct in this view, the plaintiffs were interested in overthrowing·the will. If the will stands, then the executor can .make no defense to the note, for the testator has directed its payment; but if the will be overthrown, then defense may be made to the note.

The plaintiffs are infants. They need not have brought this suit until after they arrived at the age of twenty-one years. Sec. 33, ch. 77, Code. But this is simply a privilege accorded infants. They need not wait. Under the circumstances of this case, it was proper that the suit should be brought before the assets were all disposed of.

We are of opinion to reverse the decree of the circuit court and remand the cause for further proceedings to be had in the circuit court of Marshall County.

*Reversed and remanded.*